FRANK H. BERGERON, administrator, *vs.* ARTHUR FOREST.

Worcester.    October 1, 1918. — July 16, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Verdict, Exceptions, New trial, Requests and rulings. *Landlord and Tenant,* Landlord's liability in tort to tenant and members of his family, Repairs. *Negligence,* Causing death, Of one controlling real estate, Assumption of risk. *Contract,* Consideration. *Custom. Evidence,* Custom, Presumptions and burden of proof. *Witness.*

Where a declaration in an action of tort contains counts alleging liability of the defendant upon different grounds and the jury return a general verdict for the plaintiff, the verdict, in the absence of other reversible error, must stand if there was sufficient evidence to warrant a finding for the plaintiff upon any count.

Where the owner of a tenement house orally lets to a tenant one floor without any agreement as a part of the contract of letting that he would assume the duty of looking after the condition of the premises as to safety from time to time and of doing whatever is necessary to that end whenever occasion arises, he cannot be held liable for personal injuries suffered by the tenant or a member of his family by reason of a defective condition of the premises let unless he has undertaken to make the repairs and has made them negligently.

If the landlord under the tenancy above described undertakes by a contract with

the tenant to make certain repairs on the premises and makes the repairs negligently, he is liable for injuries resulting therefrom not only to the tenant but to all persons who within the contemplation of the parties were to use the premises under the tenancy.

If the landlord under the tenancy above described undertakes gratuitously to make certain repairs, he is not liable for personal injuries, not resulting in death, caused by ordinary negligence in making the repairs, but only if such injuries result through his gross negligence, and then only to the person with whom he makes the gratuitous undertaking.

If the landlord under the tenancy above described undertakes gratuitously to make certain repairs, and the death of the person, with whom he so undertakes, is caused by ordinary negligence on his part, he is liable, under R. L. c. 171, § 2, as amended by St. 1907, c. 375, for causing such death, but he is not liable for the death of any other person caused under such circumstances by either ordinary or gross negligence on his part.

At the trial of an action by the administrator of the estate of the wife of a tenant, occupying one floor of a tenement house under a tenancy such as above described, against the landlord for causing conscious suffering and death of the wife by reason of a fall in January of a certain year due to the giving way of a railing of a piazza, which, in two counts of the declaration, it was alleged the landlord had undertaken to repair and had repaired negligently, there was evidence tending to show that, during the previous summer, the tenant in the presence of the deceased had said to the son of the defendant that the railing was unsafe and that he would move out if it was not fixed; that the son replied that "he guessed there was no need to move out" and that he would see his father about it; that the following Saturday the son returned and made the repairs; that the son made repairs when told to do so by the defendant and that in August of a year or two before the accident the son had reported to the defendant that the tenant and his family "wanted some work done" and that the defendant then had the son make some repairs. It was conceded that negligence in repairing the railing caused the injury to the tenant's wife, and that the cost of properly repairing the railing was not more than $2. *Held,* that

(1) A finding was warranted that the son made the repairs upon the railing under the authority of the defendant;

(2) A finding was warranted that the defendant undertook to make the repairs for a consideration, namely, to induce the tenant to continue his occupancy;

(3) That the plaintiff was entitled to go to the jury on the two counts above described because his intestate, the tenant's wife, belonged to the class contemplated by the parties as entitled to use the demised premises.

At the trial above described, there was admitted, subject to exceptions by the defendant, evidence tending to show that throughout the district where the tenement house in question was situated and at the time the premises were let, there was a custom that it was the duty of the landlord to make repairs upon railings of piazzas which were a part of the premises let. *Held,* that the evidence was inadmissible. Following *Conahan* v. *Fisher, ante,* 234.

In the same action there were further counts in the declaration which alleged that the repairs upon the railing of the piazza were made gratuitously by the landlord and that through negligence in making them the railing broke, causing the conscious suffering and death of the tenant's wife. There was, besides the evidence above recited, further evidence that the wife asked the defendant's son

to make the repairs and spoke of the complaint of her husband, that she was present at the conversation, above described, between the defendant's son and her husband and that after the repairs were made, the defendant's son assured her that the piazza was safe. *Held,* that the evidence warranted a finding of a gratuitous agreement by the defendant with the wife to make the repair, lack of which caused her injury.

In the two counts of the declaration last above described, there was no allegation that the injury to the plaintiff's intestate was due to gross negligence of the defendant. No question of pleading was raised. A request of the defendant asked the judge to rule that the plaintiff could not recover unless there was an agreement between the defendant and the deceased wife "to make repairs, negligent making of them and an injury to her in consequence of such gross negligence." The judge instructed the jury that the plaintiff might recover if the defendant "undertook to make repairs in a gratuitous way for the wife, and he assured her the premises were safe after he made them, and she was injured as a result of negligence in making the repairs, even though gratuitously undertaken." *Held,* that the request for a ruling, although not strictly accurate, was sufficient to direct the judge's attention to an important principle of law, that he had misstated that principle, and that harmful error thus was committed.

It appearing that the jury were not asked to consider the custom, above described, in connection with the two counts which relied on a gratuitous undertaking with the wife, it also was *held,* that, ordinary negligence of the defendant being conceded, the one of these two counts of the declaration which alleged negligence of the defendant as the cause of the death of the wife properly was submitted to the jury.

At the trial above described, the defendant was called as a witness by the plaintiff, and, subject to exceptions by the defendant, was asked and was required to answer questions, whether any repairs, done on the premises in question before the accident and after the tenant was there, were done by his authority, whether it was his practice, whenever his son told him that the tenant wanted some repairs, to tell his son to go ahead and make them, and whether, if the son repaired the railing in question, he did it with the defendant's authority. *Held,* that there was no error in permitting such examination.

It also was *held* that, on the evidence above described, it could not be ruled as a matter of law that the plaintiff's intestate assumed the risk of her injury.

In the action above described, the jury found for the plaintiff in a single verdict, general respecting the counts and specifying that they assessed a certain amount of damages for the intestate's conscious suffering and a certain amount for the causing of her death. Because there was no error at the trial as to the count for death caused by negligent performance of a gratuitous undertaking with the intestate, it was *held,* that the finding of the jury and their assessment of damages for causing the death, being general and warranted under one of the pertinent counts, should stand, although there was error at the trial as to the other count on that subject.

It further was *held,* that, because of the error at the trial, above described, which related to both of the counts as to the conscious suffering of the plaintiff's intestate, the defendant's exceptions must be sustained and there must be a new trial confined to those two counts.

TORT for conscious suffering and the causing of the death of Clarice Bergeron, the plaintiff's intestate, through the breaking on January 21, 1916, of a railing surrounding a piazza which was a part of a tenement owned by the defendant in the "Cleghorn" district in Fitchburg, of which the intestate's husband was a tenant at will. Writ dated March 25, 1916.

In the Superior Court the action was tried before *Sanderson,* J. The bill of exceptions stated, "It was conceded that the railing, the breaking of which caused the injuries of the plaintiff's intestate, was at the time of the accident out of repair and that the method alleged to have been adopted preceding the fall to repair this railing, was not a proper method to adopt in order to properly repair the railing and it was not disputed that the cost to properly repair this railing would have been trivial — not more than $2."

The plaintiff, subject to exceptions by the defendant, introduced evidence to show that there was a custom in "the Cleghorn" — a business and residence section of Fitchburg — whereby in instances of hiring such as has been stated at the time of the hiring and from thence continually, it was the duty of the landlord to make repairs upon railings of piazzas which were a part of the tenement let."

The defendant was called by the plaintiff as a witness. In the course of the examination, and subject to objections and exceptions by the defendant, he was asked the following questions, which he answered as stated:

"Q. So far as you know, any repairs that were done on that tenement, before this accident and after the Bergerons came there, were done by you or your authority? A. With my authority that they have been done. . . .—Q. And that was your practice, wasn't it, that whenever Willie Forest told you that the Bergerons wanted some repairs made in their tenement, you told Willie to go ahead and make them. A. When I thought it was necessary I had it done. . . .—Q. And if Willie Forest repaired the piazza rail by driving nails in it diagonally, this piazza rail on the south side of the house, he did it with your authority? A. Yes, sir; if he did it." Other material evidence is described in the opinion.

At the close of the evidence, a motion of the defendant for a general verdict in his favor and for a verdict in his favor on each

of the counts that finally were submitted to the jury as stated in the opinion was denied. The defendant asked for the following rulings among others:

"26. No valid and binding custom has been proved."

"32. There is no evidence that Willie Forest was authorized as the agent of his father to make any contract, to make repairs or to keep the premises safe for the tenant. There is no evidence that he was an agent of the defendant any further than to collect rents and make such repairs as he might be specifically authorized to make. But there is no evidence that the agency went any further, nor that the son had any authority to bind the defendant, and it cannot be inferred from the evidence that he was authorized to make a contract with the tenant or his wife to keep the premises safe."

"34. The contract of hiring in this case was made by the defendant with Eli Bergeron. This contract, whatever its terms, would not give to Mrs. Bergeron any right of action in contract if broken, or in tort if the defendant undertook to make repairs, made them negligently and she was injured by such negligence. In order to entitle the plaintiff to recover there must have been an agreement between the defendant and Mrs. Bergeron to make repairs, negligent making of them and an injury to her in consequence of such gross negligence. The custom alleged to exist—if the jury find that it did exist—was one of the terms of the contract between Eli Bergeron and the defendant and has no bearing upon this issue raised in the case and must not be considered by the jury."

"36. If the jury find that the expense of repairing the railing was trivial and that the insecure condition of the railing was apparent, it was the duty of the tenant, if he knew of it, or Mrs. Bergeron, if she knew of it, to make those repairs in order to prevent injury, and if the tenant or Mrs. Bergeron did not make these repairs, she assumed all risk there was in using it and the plaintiff cannot recover upon any count."

The above rulings were refused. The judge submitted special questions to the jury, which, with their answers thereto, were as follows:

"1. Did the defendant agree to make repairs on the piazza railing?" The jury answered, "He did."

"2. Did the defendant make repairs on the south railing of the piazza?" The jury answered, "He did."

"3. Were the repairs negligently made?" The jury answered, "They were."

"4. Was the defendant's negligence in making repairs the cause of the injury to Mrs. Bergeron?" The jury answered, "Yes."

"5. Did the defendant have notice of a defective condition in the south railing of the piazza?" The jury answered, "He did."

"6. Did the defendant agree to keep the premises safe for Eli Bergeron and his family?" The jury answered, "He did."

The verdict of the jury was as follows: "The jury find for the plaintiff and assess damages in the sum of $500 for conscious suffering, $3,000 for death." The defendant alleged exceptions.

The case was argued for the plaintiff at the bar in October, 1918, before *Rugg*, C. J., *Braley, De Courcy, Crosby, & Carroll*, JJ., and afterwards was submitted on briefs to all the Justices.

*J. A. Stiles & M. L. Lizotte*, for the defendant, submitted a brief.

*J. M. Hoy*, for the plaintiff.

RUGG, C. J. This is an action of tort to recover for the conscious suffering and death of the wife of Eli Bergeron, who was a tenant at will of the defendant on the second floor of a three-story house. Connected with and a part of the tenement of Eli was a piazza surrounded by a railing or balustrade, which gave way when the deceased went to empty a teapot over the railing, and she fell to the ground and suffered injuries from which she subsequently died. This action is brought to recover compensation for the conscious suffering and the penalty for the death. The case went to the jury upon four counts. The first two counts alleged a binding contract with Eli Bergeron by the defendant to make repairs upon the railing, an undertaking to repair and a negligent making of the repairs and consequent injury to the deceased. The other two counts declared upon a gratuitous undertaking by the defendant to repair the railing, negligent performance thereof with consequent injury to the deceased, who relied "upon the assurance of the defendant's agent to her that it was safe." There was no allegation of gross negligence.

The verdict was general respecting the counts. Hence, in the

absence of other reversible error, it must stand if there was sufficient evidence to go to the jury upon any count. *Pelton* v. *Nichols*, 180 Mass. 245.

There is no contention that, as a part of the original contract of hiring the tenement, the parties agreed that, and therefore came into relations whereby, the landlord assumed the duty of looking after the condition of the premises as to safety from time to time and of doing what was necessary to that end whenever occasion arose. Confessedly the rule of *Miles* v. *Janvrin*, 196 Mass. 431; *S. C.* 200 Mass. 514, 516, does not apply to the situation here disclosed.

The rights and obligations of the parties arising from the initial contract of letting the tenement were such as ordinarily attach to landlord and tenant under an oral lease. These rights and obligations are that there was no implied agreement that the demised premises were or would continue to be fit for occupancy. The tenant took them as he found them and there was no duty resting on the landlord to make repairs upon them. *Conahan* v. *Fisher, ante,* 234, where the cases are collected.

Cases like *Means* v. *Cotton,* 225 Mass. 313, 319, respecting the non-liability of a tenant for permissive waste, have no relevancy to the issues here raised.

The defendant as landlord cannot be held liable unless he has undertaken to make repairs and has made them negligently. (1) If he does this by virtue of some contract with the tenant, whereby during the tenancy either repairs or changes are made in the demised premises, the right of recovery is not limited to the tenant personally but includes all persons who within the contemplation of the parties were to use the premises under the hiring. *Feeley* v. *Doyle,* 222 Mass. 155, 157. (2) But if the landlord does this gratuitously, he is liable only to the tenant or person with whom he makes the gratuitous undertaking. *Thomas* v. *Lane,* 221 Mass. 447. *Gill* v. *Middleton,* 105 Mass. 477. In the first class of cases, that is to say, where the landlord makes repairs under contract, he is liable for ordinary negligence. *Galvin* v. *Beals,* 187 Mass. 250. In the second class of cases, that is to say, where the landlord makes repairs gratuitously, he is liable only for gross negligence, *Massaletti* v. *Fitzroy,* 228 Mass. 487, 509, except in those instances where death is caused by such act of

negligence, when, liability for death being wholly statutory, under the terms of R. L. c. 171, § 2, as amended by St. 1907, c. 375, a landlord, as well as others causing the death of a human being by negligence, is subject to the penalty there provided for ordinary negligence. *Brown* v. *Thayer*, 212 Mass. 392, 397, 398. *Flynn* v. *Lewis*, 231 Mass. 550. But the class of persons for whose death a landlord may be subject to a penalty is not enlarged beyond the class to whom he is liable for gross negligence in causing conscious suffering, because, as is pointed out in the full discussion in *Thomas* v. *Lane*, 221 Mass. 447, with ample citation of authorities, there is no duty arising out of a gratuitous making of repairs by a landlord to anybody except to the person or persons with whom the gratuitous undertaking was directly made. There can be no negligence unless there is a duty. Negligence consists in doing or omitting to do an act in violation of a legal duty or obligation due to the person sustaining injury. *Minor* v. *Sharon*, 112 Mass. 477, 487. *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341. *Bernabeo* v. *Kaulback*, 226 Mass. 128, 131. *Mammott* v. *Worcester Consolidated Street Railway*, 228 Mass. 282, 284. *Savings Bank* v. *Ward*, 100 U. S. 195, 202, 205. By way of precaution it may be added that, if the landlord does an act of gratuitous repair which creates a situation inherently dangerous, such as the presence of explosives without notice and such like conditions, there may be liability under the principle elucidated with full review of decisions in *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593.

It is conceded that the railing, the breaking of which caused injury to the deceased, was out of repair.

1. We treat first the case presented by the first two counts. There was evidence tending to show in substance that the tenant during the summer of 1915, in the presence of the deceased, said to the son of the defendant that the rail of the piazza, which subsequently caused the injury, was unsafe and that he would move out if it was not fixed, and that the reply was that he "guessed there was no need to move out" and that he would see his father about it; that on the following Saturday the same son returned and made repairs upon the piazza and railing. As to the authority of the son to make these repairs, there was considerable evidence to the effect that this son made repairs when

told to do so by his father, and that before the accident, in August, 1914 or 1915, this son had reported to his father that "the Bergerons . . . wanted some work done" and that he had authorized the son to make some repairs. There was much conflicting testimony and a contrary finding well might have been made. This was enough, however, to warrant a finding that the repairs to the railing were made by the son with the authority of the defendant, and that the reason for making the repairs was to induce the tenant to continue his occupancy of the premises, and thus that it was not a case of gratuitous repairs but of repairs made for a consideration. The construction sought to be put upon the testimony by the defendant is too narrow. The case is distinguishable from *Rolfe* v. *Tufts*, 216 Mass. 563, and also from *Kettleman* v. *Atkins*, 229 Mass. 89, relied on by him. There was evidence that the repairs were made negligently and that this was the cause of the injury to the deceased. Upon this aspect of the case the plaintiff was entitled to go to the jury, because the wife of the tenant belonged to the class contemplated by the parties as entitled to use the demised premises. The case comes within the authority of *Feeley* v. *Doyle*, 222 Mass. 155.

There was, however, error in the trial respecting these two counts. Evidence of an alleged custom of landlords to make repairs similar in kind to that held inadmissible in *Conahan* v. *Fisher*, ante, 234, was admitted at the trial. It was pertinent to those two counts. It may have been the basis of the finding of the jury rather than the evidence to which reference has been made as sufficient to carry the plaintiff to the jury on those counts. Since there is no way of knowing whether the jury based their verdict solely on the competent evidence, the exceptions so far as concerns these two counts must be sustained. The custom in the case at bar is indistinguishable in nature from that held to have been rightly excluded in *Conahan* v. *Fisher*, ante, 234, where the question is discussed at large. For the reasons there pointed out, *Shute* v. *Bills*, 191 Mass. 433, affords no authority for the admission of such evidence.

2. We pass to the consideration of the last two counts. There was evidence sufficient to warrant a finding of gratuitous repairs made by the defendant to the tenement of Eli Bergeron, who was

the tenant and the husband of the deceased. As has been pointed out, that is not sufficient to make out a case for the plaintiff.

But there was additional evidence sufficient to support a finding of an undertaking with the deceased herself to make gratuitous repairs through the agency of the son of the defendant, whose authority in the premises has already been discussed. There was evidence to the effect that the deceased made request of the son of the defendant for the making of repairs on the piazza, that she spoke of the complaint of her husband of the unsafe condition of the piazza, that she was present and participated in the conversation with the defendant's son when the statement was made by her husband that the tenement would be vacated and "we would move out," if the repairs on the piazza were not made, and that after the repairs were made the son of the defendant assured her that the piazza was safe. The defendant testified that his son reported on one occasion before the accident, "that he had been down to the Bergeron house and collected rents from the Bergerons and they wanted some work done; they want some repairs done; I told Willie to make the repairs that were asked." Although the case is close upon this point, we are of opinion that this was sufficient to warrant a finding of a gratuitous agreement with the wife. *Gill* v. *Middleton,* 105 Mass. 477. *Thomas* v. *Lane,* 221 Mass. 447, 451.

There was no allegation of gross negligence in making the repairs. But no question of pleading appears to have been raised in this connection. The defendant asked for an instruction to the effect that the plaintiff could not recover unless there was an agreement between the defendant and the deceased "to make repairs, negligent making of them and an injury to her in consequence of such gross negligence." This was not correct as to the death count, but it was sound as to the count for conscious suffering. It was enough to call the attention of the judge to the matter of gross negligence. He, however, made no distinction in his charge and instructed the jury that the plaintiff might recover if the defendant "undertook to make repairs in a gratuitous way for the wife, and he assured her the premises were safe after he made them, and she was injured as a result of negligence in making the repairs, even though gratuitously undertaken she may recover unless you find she was not in the exercise of due care."

In this there was error. As the judge should have drawn the distinction between the degree of negligence which would warrant recovery between the count for death and for conscious suffering, that point must be sustained. Even though the request was not strictly accurate in the general form in which it was presented, it was sufficient to direct the consideration of the judge to an important principle of law not adverted to in the charge, an omission which well may have resulted in harm to the defendant. *Bride* v. *Clark,* 161 Mass. 130. *Yancey* v. *Boston Elevated Railway,* 205 Mass. 162, 172. *Gascoigne* v. *Cary Brick Co.* 217 Mass. 302, 305.

There was evidence of ordinary negligence in making the repairs which required the submission of the death count to the jury. There was no error in the instruction so far as this count was concerned. The error in admitting evidence as to custom which already has been pointed out is not material upon the counts for negligence in performance of a gratuitous undertaking to repair. A fair construction of the charge shows that the jury were not misled in this respect, and that the evidence as to custom was confined to the counts referring to repairs made by virtue of a contract.

3. There was no error in the examination of the defendant called as a witness by the plaintiff. *Taylor* v. *Schofield,* 191 Mass. 1. *Smith* v. *Boston Elevated Railway,* 208 Mass. 186.

4. It could not have been ruled as matter of law that the plaintiff's intestate assumed the risk. So far as that differs from want of due care in a case like the present it was an affirmative defence and the burden of proving it rested upon the defendant. *Leary* v. *William G. Webber Co.* 210 Mass. 68. It rarely can be ruled as matter of law that this burden of proof has been sustained. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, and cases there collected. The case at bar does not fall within any of the exceptions to that rule.

The result is that there can be recovery for the amount found by the jury on the last count, which is for the death. The finding of the jury is to stand in this respect. This disposes also of the second count, which is for death based upon negligence in the performance of a contract with Eli, the husband of the deceased. The counts for conscious suffering and for death are essentially different in their nature and are combined for convenience in one action. *McCarthy* v. *William H. Wood Lumber*

*Co.* 219 Mass. 566. The exceptions must be sustained as to the counts for conscious suffering and the new trial is to be confined to those counts. St. 1913, c. 716. *Simmons* v. *Fish,* 210 Mass. 563.

<div align="right">

*So ordered.*