CARROLL ELIZABETH YOUNG vs. MITCHELL GARWACKI
& another.

Hampden.  December 3, 1979. — March 19, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Landlord and Tenant*, Repairs, Landlord's liability to tenant or one
having his rights.  *Negligence*, One owning or controlling real estate,
Repair.

Review of the common law tort liability of a landlord of residential
premises, and recent departures therefrom by decisions and statutes.
[164-169]

A guest of a tenant of residential premises was entitled to recover com-
pensation from the landlord for injuries caused by negligent mainte-
nance of an area rented to the tenant, a porch, accessible only from the
tenant's living room and not under the landlord's control, having a
railing which the landlord had warned the tenant was dangerous and
which gave way when the guest leaned on it and fell. [170-171]

Henceforth, a landlord of residential premises must exercise reasonable
care not to subject others to an unreasonable risk of harm, and must
act as a reasonable person under all of the circumstances including the
likelihood of injury to others, the probable seriousness of such injuries,
and the burden of reducing or avoiding the risk.  [169]

CIVIL ACTION commenced in the Superior Court on Au-
gust 3, 1977.

The case was tried before *Moriarty, J.*

After the case was reported by him to the Appeals Court,
the Supreme Judicial Court, on its own initiative, ordered
direct review.

*Thomas A. Kenefick, III*, for the plaintiff.

*Susan C. Cohen & James H. Wexler*, for Housing Allow-
ance Project, Inc., & another, amici curiae, submitted a brief.

LIACOS, J.  On August 3, 1977, the plaintiff Young com-
menced this action in the Superior Court in Hampden
County against the defendants Garwacki (tenant) and Ken-
neth N. LaFreniere (landlord).  The complaint stated two
counts of negligence, one against the tenant and the other

against the landlord, in which Young sought damages for personal injuries sustained in a fall from the second-story front porch of the tenant's apartment. Young alleged that she was lawfully on the premises and that the railing had been negligently maintained. The case was tried to a jury which found for the plaintiff on both counts and returned answers to special questions on September 21, 1978. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). The landlord then filed a motion for judgment notwithstanding the verdict. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). On September 28, the trial judge filed a memorandum and order. He entered judgment for Young against the tenant for $20,000; no appeal has been taken by the tenant. On October 3, he allowed the landlord's motion for judgment notwithstanding the verdict. The plaintiff filed notice of appeal. On January 26, 1979, the judge reported the case against the landlord to the Appeals Court. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We brought the case here on our own motion. We reverse.

The facts as stated in the judge's report show the following. The accident occurred on the landlord's property at 7 Park Street in Westfield. Garwacki rented the house's second-floor apartment as a tenant at will. One Larry Mastello shared the apartment with him. Mastello invited Young, a friend of both men, to a dinner party on April 21, 1977. She arrived before the other guests and began preparing the dinner. On his way to pick up a friend, Mastello went down to his car which was parked in a driveway near the front of the house. Young went to the front porch to ask him to pick up some groceries on his way back. When she placed her hands on the railing and leaned forward to call down to Mastello, the railing gave way. She fell to the ground and was injured.

In December, 1976, the landlord's insurance company had informed him that the railing was dangerous and had cancelled his liability insurance. At that time, the landlord warned the tenant of the danger and bought materials to repair the railing, but he made no repairs.

According to the judge's report, the landlord had made no express agreement to keep the premises in repair, although he testified he considered it his obligation to repair the porch railing. Furthermore, the porch, which was accessible only from the tenant's living room, was part of the demised premises, not under the landlord's control. In answer to the judge's special questions, the jury found that the landlord did not exercise reasonable care in his maintenance of the premises, that his negligence was the proximate cause of the plaintiff's injuries, and that she was not at all negligent herself.[1]

Thus, this case presents a question we have reserved before. *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 514 (1974). See *Markarian* v. *Simonian*, 373 Mass. 669 (1977). In the absence of the landlord's express agreement to keep the rented premises in repair, is he liable to his tenant's guest for injuries resulting from his negligent failure to maintain the safety of the premises?

Common law rules defining a landowner's liability in negligence to people coming onto the land reflected the needs of an agrarian society. The landowner was a petty sovereign within his boundaries. The character of his duty to an injured party varied with the party's relationship with the sovereign. *Mounsey* v. *Ellard*, 363 Mass. 693, 695 (1973). Thus, the common law distinguished several classes of tort plaintiffs; among them, trespassers, licensees, invitees, and tenants.

---

[1] The judge instructed the jury to assume that there was an implied duty imposed on the landlord to exercise reasonable care to maintain the rental premises in a reasonably safe condition. By doing this, he utilized the device of special questions so that the jury could determine whether the landlord had violated such duty. He states in his report that he did so "in the hope of obviating the necessity of a new trial if an appellate court did decide in this case that landlords are under such a duty." We commend the judge for this approach as being consistent with the intent of Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974), and the conservation of limited judicial resources. See, e.g., *Smith* v. *Ariens Co.*, 375 Mass. 620, 627-628 (1978); *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976).

The traditional approach to tenants turned on the concept of a lease as a conveyance of property. The tenant "bought" the leasehold at his peril, so he could not expect the landlord to have repaired preexisting defects, and at the time of the letting, the landlord ceded to the tenant his dominion over the rented premises. Under this ancient view, the axiom was "there is no law against letting a tumbledown house." *Robbins* v. *Jones*, 15 C.B. (N.S.) 221, 240, 143 Eng. Rep. 768, 776 (1863). The landlord might have been liable for negligent maintenance of common areas, but was not generally liable for the negligent maintenance of the premises themselves. See generally Restatement (Second) of Property, Landlord and Tenant c. 17, Introductory Note & § 17.3 (1977); 2 R. Powell, Real Property par. 233 (at 330.69-330.70), par. 234[2][b] (P. Rohan 1977).

The landlord "was under a separate and limited duty toward each tenant and that tenant's visitors to exercise reasonable care to maintain the common areas in a condition not less safe than they were, or appeared to be in, at the time of the letting to the particular tenant." *King* v. *G & M Realty Corp.*, 373 Mass. 658, 660 (1977). *Lindsey* v. *Massios*, 372 Mass. 79, 81-82 (1977). As to the demised premises, caveat emptor reigned. The tenant took the premises as he found them. See *Gade* v. *National Creamery Co.*, 324 Mass. 515, 518 (1949). "The general rule is that the landlord is not liable to the tenant for defects in the premises existing at the time of the letting unless they are hidden defects of which he is aware and does not warn the tenant." *Ackarey* v. *Carbonaro*, 320 Mass. 537, 539 (1946). The defect had to be one that was not discoverable by the tenant. *Cooper* v. *Boston Hous. Auth.*, 342 Mass. 38, 40 (1961).[2] We set out the remaining rules in *DiMarzo* v. *S. &*

---

[2] In addition to the hidden defects exception, many jurisdictions require landlords who lease property for a purpose involving admission of the public to exercise reasonable care to discover and remedy defects existing at the time of the letting, if the landlord can reasonably expect that the tenant will admit the public before the property is made safe. Restatement (Second) of Property, Landlord and Tenant § 17.2 (1977). This

*P. Realty Corp., supra* at 513. As we stated in *DiMarzo*, during the term of the rental, "there could be no tort liability for nonfeasance in the absence of an agreement, for consideration, that the landlord would keep the premises in a condition of safety, and make all repairs without notice. *Fiorntino* v. *Mason*, 233 Mass. 451 (1919). *Jacovides* v. *Chaletzky*, 332 Mass. 225 (1955). *Bushfan* v. *Gluck*, 339 Mass. 772 (1959). *Schopen* v. *Rando*, 343 Mass. 529 (1962). *Long* v. *Russell*, 344 Mass. 758 (1962). Gratuitous repair creates tort liability only if it is done in a grossly negligent fashion. *Bergeron* v. *Forest*, 233 Mass. 392 (1919). *Barrett* v. *Wood Realty Inc.* 334 Mass. 370 (1956). *Popowych* v. *Poorvu*, 361 Mass. 848 (1972). The ordinary agreement for consideration by which a landlord is to make repairs is construed as an agreement to repair on notice. *Conahan* v. *Fisher*, 233 Mass. 234 (1919). *Fiorntino* v. *Mason*, 233 Mass. 451 (1919). Failure to repair under such an agreement gives rise only to a contract action for the cost of the repair. Tort liability will exist, however, for negligently made repairs. In the absence of such a specific agreement to repair, no agreement will be implied from the mere letting of the premises, and any repairs made will be treated as gratuitous. *Bergeron* v. *Forest*, 233 Mass. 392 (1919)." *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. at 513.

After seven years of reconsideration and reform, little remains of this obsolete machinery of the common law. Much of the reform has been accomplished judicially.[3] "Recent

---

broad exception never came into the law of the Commonwealth. *Mallard* v. *Waldman*, 340 Mass. 288 (1960). See G. L. c. 21, § 17C. But see *Simons* v. *Murray Realty, Inc.*, 330 Mass. 194, 196-197 (1953); *Oxford* v. *Leathe*, 165 Mass. 254, 255 (1896) (licensing of public hall for brief period). For a thorough discussion of exceptions to the rule of nonliability, see generally 2 R. Powell, Real Property par. 234 (P. Rohan 1977).

[3] For examples of statutory reform, see G. L. c. 111, §§ 127A-127K (public and private remedies for sanitary code violations); G. L. c. 111, § 127L (repair and deduct); G. L. c. 186, § 14 (criminal and civil penalties for failure to furnish essential services or for interference with quiet enjoyment); G. L. c. 186, §§ 15-15F (limits on freedom of contract); G. L. c. 186, § 18 (penalties for reprisals against tenants); G. L. c. 186,

decisions of this court clearly reflect . . . a shift in philosophy with regard to status distinctions in tort standards of care . . . ." *Poirier* v. *Plymouth,* 374 Mass. 206, 221 (1978).[4] In *Mounsey* v. *Ellard,* 363 Mass. 693 (1973), we did away with the legal significance in tort of categories of licensee and invitee and held that a landowner owes a duty of reasonable care to all lawful visitors. We said: "The problem of allocating the costs and risks of human injury is far too complex to be decided solely by the status of the entrant, especially where the status question often prevents the jury from ever determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case." *Id.* at 707. Since *Mounsey,* we have eliminated other limits based on status. E.g., *Soule* v. *Massachusetts Elec. Co.,* 378 Mass. 177 (1979) (foreseeable child trespasser); *Poirier* v. *Plymouth, supra* (employee of independent contractor); *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696 (1974) (helplessly trapped trespasser).

In the landlord-tenant field, we have held that a landlord is liable to a tenant's guest for failing to exercise due care in maintaining common passageways under the landlord's control without regard to their condition at the time of the letting. *Lindsey* v. *Massios, supra.* We said that "the

---

§ 19 (tort action against landlord who fails to correct unsafe condition after notice); G. L. c. 186, § 20 (tenant's recovery of attorney's fees); G. L. c. 239, § 2A (reprisal against tenant for reporting violations of law or joining tenant's union is defense to summary process action); G. L. c. 239, § 8A (defenses and counterclaims in summary process proceedings; rent withholding). For a discussion of a tenant's remedies under the consumer protection statute, G. L. c. 93A, see Note, Consumer Protection Legislation and the Assertion of Tenant Rights: The Massachusetts Paradigm, 59 B.U.L. Rev. 483 (1979).

[4] A parallel shift in philosophy has occurred in the area of tort immunity. We have repeatedly demonstrated our readiness to reconsider common law immunity doctrines. See, e.g., *Colby* v. *Carney Hosp.,* 356 Mass. 527 (1969) (charitable immunity); *Sorensen* v. *Sorensen,* 369 Mass. 350 (1975) (parental immunity); *Lewis* v. *Lewis,* 370 Mass. 619 (1976) (interspousal immunity); *Whitney* v. *Worcester,* 373 Mass. 208 (1977) (sovereign immunity).

status of the person visited, landowner or lessee, should not affect the visitor's right to personal safety or the landowner's obligation reasonably to maintain premises in his control." *Id.* at 82. In *King* v. *G & M Realty Corp., supra,* we extended the landlord's general and continuing duty to exercise reasonable care as to the safety of common passageways to include tenants as well as their visitors.

We have also attacked the theory on which the tenant's status classification depends. In the line of cases creating and applying the implied warranty of habitability, we have overthrown the doctrine of caveat emptor and the notion that a lease is a conveyance of property. *Berman & Sons* v. *Jefferson,* 379 Mass. 196 (1979). *Crowell* v. *McCaffrey,* 377 Mass. 443 (1979). *Boston Hous. Auth.* v. *Hemingway,* 363 Mass. 184 (1973). Moreover, we have invoked the doctrine of warranty to afford a tenant compensation not only for economic loss, as in *Berman* and *Hemingway,* but for personal injury. *Crowell* v. *McCaffrey, supra* at 450-453. Thus, at least to the extent required by the relevant housing and building codes, a landlord may be liable to his tenant for failing to maintain areas not under the landlord's control.

Today, we do away with the ancient law that bars a tenant's guest from recovering compensation from a landlord for injuries caused by negligent maintenance of areas rented to the tenant. Like the other rules based on status, this rule has prevented a whole class of people from raising the overriding issue: whether the landlord acted reasonably under the circumstances. The practical result of this archaic rule has been to discourage repairs of rented premises. In cases like the one before us, a landlord with knowledge of a defect has less incentive to repair it. And the tenant, who often has a short-term lease, limited funds, and limited experience dealing with such defects, will not be inclined to pay for expensive work on a place he will soon be leaving.[5]

---

[5] Of course, nothing we say here as to the landlord's duty of care is to be construed as relieving a tenant of his legal responsibility to exercise reasonable care as to the demised premises.

Thus, the defect may go unrepaired until an unsuspecting plaintiff finds herself with a lawsuit that care could have prevented.

Seven years ago, in *Sargent* v. *Ross*, 113 N.H. 388, 397-398 (1973), Chief Justice Kenison wrote: "Henceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm. A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk. We think this basic principle of responsibility for landlords as for others 'best expresses the principles of justice and reasonableness upon which our law of torts is founded'" (citations omitted). Henceforth, this basic principle of responsibility applies to Massachusetts landlords as well. Accord, *Brennan* v. *Cockrell Invs., Inc.*, 35 Cal. App. 3d 796 (1973); *Willcox* v. *Hines*, 100 Tenn. 538 (1898); *Pagelsdorf* v. *Safeco Ins. Co. of America*, 91 Wis. 2d 734 (1979). See *Clarke* v. *O'Connor*, 435 F.2d 104 (D.C. Cir. 1970); *Presson* v. *Mountain States Properties, Inc.*, 18 Ariz. App. 176 (1972). See generally Love, Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability? 1975 Wis. L. Rev. 19. See also Restatement (Second) of Property, Landlord and Tenant c. 17, Introductory Note at 155-156 (1977) (adopting common law rule set out in Restatement [Second] of Torts §§ 355, 365 [1965], but acknowledging trend away from common law rule).[6]

---

[6] In reaction against the traditional rule, courts have "expended considerable energy and exercised great ingenuity in attempting to fit various factual settings into the recognized exceptions." Restatement (Second) of Property, Landlord and Tenant c. 17, Reporter's Note to Introductory Note 2, at 157 (1977). By eliminating the rule entirely, we obviate the need for its exceptions. Thus, the hidden defect doctrine, which we criticized in a related context in *Poirier* v. *Plymouth*, 374 Mass. 206 (1978), has lost its raison d'etre. The question now must be whether the landlord, in the exercise of reasonable care, should have discovered the defect and repaired it within a reasonable time. See Greaney, Developing Duties of a Landlord with Regard to Tenant Safety, 63 Mass. L. Rev. 61, 66 (1978). The comparative negligence statute, G. L. c. 231, § 85, sets the plaintiff's responsibilities if, in the exercise of reasonable care, he should have discovered the defect.

The former rule was not without its reasons. When a landlord rents an apartment to a tenant, he gives up his right to enter. Ordinarily, absent a contractual agreement or the tenant's permission, the landlord can neither inspect for defects nor make repairs on the rented premises. See G. L. c. 186, § 15B (1) (*a*). This obstacle, however, does not justify the landlord's wholesale absolution from liability.[7] Matters of control, like matters of status, can be components of familiar negligence analysis; they can affect such questions as reasonableness and foreseeability. So, too, may matters of intervening negligence by the tenant or others be treated. Cf. G. L. c. 186, § 19. In particular, a landlord should not be liable in negligence unless he knew or reasonably should have known of the defect[8] and had a reasonable opportunity to repair it.[9]

Our statutes do not support limiting a landlord's negligence liability to areas under his control. General Laws c. 186, § 19,[10] requires most landlords to exercise reasonable

---

[7] In fact, under our cases, the landlord was not liable even after the right to obtain control of the premises reverted to him. Liability attached only after the landlord actually obtained control. *Cassidy* v. *Welsh,* 319 Mass. 615 (1946).

[8] Because the landlord here had knowledge of the defect, we need not consider the extent to which landlords may be chargeable with knowledge.

[9] The rule may be different in an action for injuries resulting from breach of the warranty of habitability. In *Crowell* v. *McCaffrey,* 377 Mass. 443, 452 (1979), we left open the question whether the landlord's liability begins only after he has had notice of the defect and a reasonable time to repair it. Cf. *Berman & Sons* v. *Jefferson,* 379 Mass. 196 (1979), (right to rent abatement commences at time of notice, not after reasonable time to repair).

[10] The statute, inserted by St. 1972, c. 665, provides: "A landlord or lessor of any real estate except an owner-occupied two- or three-family dwelling shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant, his invitee, or any one occupying through or under the tenant, exercise reasonable care to correct the unsafe condition described in said notice except that such notice need not be given for unsafe conditions in that portion of the premises not under control of the tenant. The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or

care to correct an unsafe condition of which the tenant or a code enforcement agency has given him notice. If a landlord fails to correct the condition within a reasonable time, the tenant or any person rightfully on the premises has a tort action against the landlord for injuries sustained. General Laws c. 186, § 15,[11] renders invalid any lease clause which has the effect of idemnifying the landlord or exculpating him from "any . . . negligence . . . on or about the leased . . . premises." In St. 1974, c. 575, § 1, the Legislature deleted the phrase "and not within the exclusive control of the lessee or tenant." Thus, the landlord is liable in negligence for defects of which he has notice, even though the defect occurs on the rented premises. Furthermore, the landlord cannot exculpate himself from liability for negligent maintenance of the rented premises. Both of these statutes are consistent with the result we reach today.[12]

lessor for damages. Any waiver of this provision in any lease or other rental agreement shall be void and unenforceable. The notice requirement of this section shall be satisfied by a notice from a board of health or other code enforcement agency to a landlord or lessor of residential premises not exempted by the provisions of this section of a violation of the state sanitary code or other applicable by-laws, ordinances, rules or regulations."

[11] The statute, as amended by St. 1974, c. 575, § 1, provides: "Any provision of a lease or other rental agreement relating to real property whereby a lessee or tenant enters into a covenant, agreement or contract, by the use of any words whatsoever, the effect of which is to indemnify the lessor or landlord or hold the lessor or landlord harmless, or preclude or exonerate the lessor or landlord from any or all liability to the lessee or tenant, or to any other person, for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord on or about the leased or rented premises or on or about any elevators, stairways, hallways or other appurtenance used in connection therewith, shall be deemed to be against public policy and void."

[12] The statutes also raise a number of questions which we need not decide. Although we do not construe them today, the statutes are not limited by their terms to residential properties. We do not decide whether our rule today should extend to nonresidential properties. Cf. *Berman & Sons* v. *Jefferson, supra; Crowell* v. *McCaffrey, supra; Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184, 199 (1973) (warranty of habitability limited to "rental of any premises for dwelling purposes"). Section 19 excludes from its coverage unsafe conditions in owner-occupied two- or three-family dwellings. We need not consider whether negli-

We reverse the judgment and remand the case to the Superior Court with orders that the jury's verdict be reinstated.

*So ordered.*

---

gence liability should be similarly limited.  Cf. *Crowell* v. *McCaffrey, supra* at 452 (refusing to make exception in warranty context).  Finally, § 19 applies to both tenants and other persons rightfully on the premises. In its narrowest application, our rule today governs only plaintiffs who are the tenant's guests.  Compare *King* v. *G & M Realty Corp.*, 373 Mass. 658 (1977), and *Lindsey* v. *Massios*, 372 Mass. 79 (1977) (persons lawfully on premises may sue for landlord's negligent maintenance of areas he controls), with *Crowell* v. *McCaffrey, supra* (tenant may recover in warranty).