JOHN AGUSTYNOWICZ *vs.* ALLEN W. BRADLEY & others.[1]

No. 87-389.

Hampden. January 8, 1988. — February 22, 1988.

Present: GRANT, DREBEN, & FINE, JJ.

*Negligence,* One owning or controlling real estate, Repairs. *Landlord and Tenant,* Repairs, Landlord's liability to tenant or one having his rights.

In a negligence action in which the injured plaintiff alleged that the owners of a commercial building failed to maintain a garage door therein in a safe condition, the judge correctly granted the defendant owners' motion for judgment notwithstanding the verdict where the evidence demonstrated that the tenant of the building in question, under the terms of a "net" lease, was the only entity that reasonably could have been expected to maintain the garage door in a safe condition. [407-409]

CIVIL ACTION commenced in the Superior Court Department on November 25, 1981.

The case was tried before *William W. Simons,* J.

*Richard J. Ianello* for the plaintiff.

*Patricia A. Bobba* for the defendants.

FINE, J. In 1981, while acting in the course of his employment for Spring Meadow Oldsmobile, Inc., an automobile dealership in Springfield, the plaintiff injured his back as he was attempting to raise an overhead garage door. The plaintiff brought an action against the three individual defendants who own the real estate which was leased to Spring Meadow Oldsmobile, Inc., to operate its business. The complaint alleged that the defendants were negligent in failing to maintain the door. Spring Meadow Oldsmobile, Inc., was not named as a defend-

---

[1] Guy Owens and Donald J. Griggs. The defendants brought a third-party action against Daniele Overhead Door Co., Inc. At the close of all the evidence, the trial judge allowed the third-party defendant's motion for directed verdict, and judgment entered accordingly. No appeal was taken from that judgment.

ant. Allen W. Bradley, who is one of the three defendants in the case, is, however, both the president of Spring Meadow Oldsmobile, Inc., and one of the owners of the real estate.

A jury heard evidence warranting the following findings. At the time of the plaintiff's injury the heavy overhead spring door was in need of repair. It was difficult to lift as it was worn out, rusty, and the rollers on it would not move. The plaintiff's back problems were causally related to the defective condition of the door. Bradley was aware that the door was hard to lift and in need of repair.

The jury also had before them the lease for the premises on which the door was located. The lease was for a term of five years, commencing February 1, 1979. It included three parcels of land and an entire building located on the land. The lease provided: "It is intended by and between the parties hereto that this is [a] net lease in every respect and that in addition to the basic rent set forth herein, Lessee will pay all real estate taxes, fire insurance on the buildings and extended coverage, water bills, sewer bills and make all major and minor repairs to this property of every nature whatsoever, both structural and otherwise." The owners reserved the right, however, to "make repairs and alterations if they should elect so to do."[2]

The defendants moved for directed verdicts at the close of the plaintiff's case and again at the close of all the evidence. On both occasions, the judge expressed the view that evidence of the defendants' negligence was lacking. Following the recommended procedure, however, the judge denied the motions, preferring to rule on the sufficiency of the evidence, if necessary, after the jury rendered their verdicts. In answer to special questions, the jury found causal negligence on the part of the plaintiff and the defendants in the respective proportions of forty-nine percent and fifty-one percent, and judgment was entered for the plaintiff in accordance with the verdicts in the amount of $140,250. After further hearing, the judge allowed

---

[2] Presumably this right was reserved by the owners for their benefit, so that they could make whatever repairs might be necessary to protect their investment should the tenant neglect its duty to make repairs.

the defendants' motion for judgment notwithstanding the verdicts. We affirm the judgment.

In *Young* v. *Garwacki*, 380 Mass. 162, 169 (1980), the Supreme Judicial Court overruled prior case law and held that a residential landlord had a duty to exercise reasonable care not to subject a tenant's guest to an unreasonable risk of harm. The question whether that holding applied to commercial property was expressly left open. *Young* v. *Garwacki*, 380 Mass. at 171 n.12. See also *Brighetti* v. *Consolidated Rail Corp.*, 20 Mass. App. Ct. 192, 197 n.5 (1985). But see *Hopkins* v. *F.W. Woolworth Co.*, 11 Mass. App. Ct. 703, 705-706 (1981) (a duty to exercise reasonable care imposed on a landlord in a commercial setting). Because we agree with the trial judge that there was insufficient evidence of the defendants' negligence to justify the jury verdict, it is not necessary for purposes of this case for us to resolve that question. Consistent with the recent trend in the law, see Restatement (Second) of Property, Landlord and Tenant, Introductory Note to Chapter 17 (1976), we assume without deciding that negligence principles may determine the liability of a commercial landlord to tenants and others injured on leased property.[3] We proceed to consider all the evidence in the light most favorable to the plaintiff to determine if reasonable jurors could have concluded that the defendants were negligent.

There was a basis in the evidence for a finding of negligence on the part of the person or persons who would reasonably be expected to maintain the door in a safe condition. The tenant, Spring Meadow Oldsmobile, Inc., having expressly assumed the duty to make repairs, was such a person. A negligence claim against Spring Meadow Oldsmobile, Inc., however, was barred by G. L. c. 152, § 23 (the worker's compensation statute). The question is whether a reasonable jury could find that the defendant owners also had a duty to maintain the door. In the

---

[3] The application of a negligence standard in this case is consistent with G. L. c. 186, § 19, inserted by St. 1972, c. 665, assuming it applies to commercial tenancies. See *Young* v. *Garwacki*, 380 Mass. at 166 n.3; *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 330-331 (1980). The plaintiff did not rely on this statute in his complaint, at trial, or on appeal.

circumstances of this case, we think not. The lease is a "net" lease, an arrangement that "generally puts the burdens of ownership on the lessee." *Chicago City Bank & Trust Co.* v. *Ceres Terminals, Inc.*, 93 Ill. App. 3d 623, 632 (1981). See *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 609-610 (1984). The lease included the land and the entire building in which the door was located. There were no common areas. The lease was abundantly clear that the burden of making all repairs lay with the tenant. Compare *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 331-332 (1980) (landlord's express agreement to repair created an implied agreement to indemnify tenant for any injuries or losses suffered by tenant as a result of a negligent or wrongful failure to make required repairs). Repairs to the door after the plaintiff's injury were made, in fact, by a contractor hired by the tenant, not by the defendant owners. Thus, the tenant was in full control of the premises.

Although not by themselves dispositive of a landlord's liability, both the lack of control and the tenant's intervening negligence are matters open for consideration on the issue of negligence. See *Young* v. *Garwacki*, 380 Mass. at 170. We think it unreasonable in the circumstances we have described to expect the defendant owners to undertake responsibility for maintaining the door. This is so even if Bradley, one of the owners, may have had actual notice of the condition of the door. Although he may have acquired that knowledge in his capacity as president of Spring Meadow Oldsmobile, Inc., as a matter of common sense he may be presumed to have acquired it also in his capacity as an owner. The mere fact that Bradley knew there was a problem with the door, however, was not enough to make it reasonable to expect the owners to take it upon themselves to repair the door used by the tenant in conducting its business. We note that, although the door may have been hard to open, due to lack of proper maintenance, it was not in such an unusually hazardous condition that serious bodily harm or death was likely to occur, and there is no indication in the record that the door was in a defective condition at the inception of the lease.

The result we reach is consistent with the rationale underlying *Young* v. *Garwacki*. Unlike the typical residential tenancy with which that case dealt, and even unlike many commercial tenancies, the tenancy in this case, realistically, is the rough equivalent of a conveyance of an interest in land. In addition, the situation in this case is not one in which the tenant has "a short-term lease, limited funds, and limited experience dealing with such defects." *Young* v. *Garwacki*, 380 Mass. at 168. Nor is it necessary to hold liable landlords such as the defendants in this case in order to give the appropriate party the incentive to make necessary repairs. Based upon the relationship established in the lease, the tenant was the only appropriate party to provide maintenance to the door.

*Judgment affirmed.*