JAMES CHAUSSE vs. HENRY W. COZ & another,[1] trustees.

Worcester. April 3, 1989. — July 3, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Landlord and Tenant,* Duty to repair, Landlord's liability to tenant or one
  having his rights, Habitability. *Negligence,* One owning or controlling
  real estate.

In an action by a worker injured in an aluminum dust explosion in a building
    where his employer had introduced an industrial process that was danger-
    ous at low levels of humidity, there was no merit in the plaintiff's claim
    that the defendant lessors of the building, by reason of their agreement
    *to repair certain defects,* should be liable for failing to equip it with a
    means of maintaining humidity. [265]
In an action by a worker injured in an aluminum dust explosion in a building
    his employer had leased from the defendants, this court declined to
    address the question whether to extend to lessors of commercial premises
    the obligation that lessors of residential property have to maintain the
    leased premises in reasonably safe condition, where the circumstances
    that caused the plaintiff's injury resulted from the lessee's own industrial
    process. [266-267]
In an action by a worker injured in an aluminum dust explosion in a building
    his employer had leased from the defendants, this court declined to
    decide the question of the applicability of any implied warranty of habita-
    bility, where, since the lessee itself had introduced an industrial process
    that was dangerous at low levels of humidity, the "defect" in the premises,
    namely, insufficient humidity to inhibit the buildup of static electrical
    changes, was not a condition for which a lessor would be held liable
    on a theory of implied warranty. [267-268]

CIVIL ACTION commenced in the Superior Court Department
on March 25, 1982.

A motion for summary judgment was heard by *William C.
O'Neil, Jr.,* J.

[1] Mary J. Coz, each individually and as trustees of the Coz Realty Trust.
No claim is asserted before us that any defendant is liable individually.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Andrew L. Mandell* for the plaintiff.

*John F. Hurley, Jr.,* for the defendants.

WILKINS, J. The plaintiff was seriously injured in an accident that occurred in February, 1980, while he was at work in a building in Northbridge. The plaintiff's employer had leased the building from the defendant trustees since 1968. The plaintiff appeals from a summary judgment entered in favor of the defendants. We transferred the plaintiff's appeal here on our own motion. We affirm the judgment.

An affidavit of a professional physicist, filed on behalf of the plaintiff, states that the accident occurred when there was an explosion associated with the rapid oxidation of finely-divided aluminum that was being transferred from one container to another. The combination of steam heat and no humidity control will lead to very low relative humidities within the factory during winter months. "Very low relative humidities enhance the build-up of static electric charge on all materials which have intrinsically low conductivity." Powdered aluminum is extremely explosive. In the expert's opinion, a spark of static electricity triggered the explosive oxidation of the aluminum powder when it was being poured into a receiving vat. One means of controlling the build-up of static electricity is to maintain the relative humidity of the ambient air at 60% to 70%. "[T]he failure to equip [the] building with means to control humidity was a significant contributing factor" to the explosion.

1. The plaintiff argues briefly that the lessors should be liable because, under the terms of the lease, the lessors agreed to repair certain defects in the premises. The lease placed on the lessee the obligation to make certain repairs and (at least between the lessee and lessor) exonerated the lessor from liability for injury to anyone injured on the premises except a person injured due to the lessor's fault. It is not clear that the lessors covenanted to repair any defects. If they did, their agreement extended only to structural defects. Unreasonably low humidity is not a structural defect.

2. The plaintiff presses more vigorously his claim that we should extend to commercial lessors the obligation that lessors of residential property have to maintain leased premises in a reasonably safe condition.

In *Young* v. *Garwacki*, 380 Mass. 162 (1980), we held that, even in the absence of an express agreement to keep rented premises in repair, a lessor of residential premises had a duty to exercise reasonable care to assure that others legitimately on the leased premises were not subject to an unreasonable risk of harm. If such a lessor knew or should have known of a defect, the lessor would be liable for injuries resulting from the lessor's negligent maintenance of areas rented to the lessee. *Id.* at 168.[2] The *Young* opinion explicitly reserved the question whether its new rule would apply to leased commercial premises. *Id.* at 171 n.12. Subsequent cases have done the same. *Agustynowicz* v. *Bradley*, 25 Mass. App. Ct. 405, 407 (1988). *Brighetti* v. *Consolidated Rail Corp.*, 20 Mass. App. Ct. 192, 197 n.5 (1985). The plaintiff seeks an extension of the rule of *Young* v. *Garwacki* because under Massachusetts law to date a lessor of commercial premises is liable in tort for personal injuries only if either (1) he contracted to make repairs and made them negligently, or (2) the defect that caused the injury was in a "common area," or other area appurtenant to the leased area, over which the lessor had some control. See, e.g., *Toubiana* v. *Priestly*, 402 Mass. 84 (1988) (allegedly defective elevator in multiple tenancy commercial building); *Monterosso* v. *Gaudette*, 8 Mass. App. Ct. 93, 98, 102 (1979) (bathroom off of common passageway).

We need not address the broad question whether a commercial lessor should ever be liable for the negligent maintenance of premises leased to a tenant that had the duty under the lease to maintain the premises in good repair. See *Agustynowicz* v. *Bradley; supra* at 409.[3] The circumstances that caused the plain-

---

[2] The summary judgment record is silent on the question whether the lessors knew or should have known of the alleged defect. Thus the defendants have not established on the record that they had no notice of the defect.

[3] See generally Glendon, The Transformation of American Landlord-Tenant Law, 23 B.C.L. Rev. 503, 559 (1982) (Glendon), suggesting a lessor's

tiff's injury in this case were created by the lessee's own manufacturing process. "Low humidity" is not the kind of "defect" in premises that would warrant the imposition of liability on a lessor of commercial premises for injuries caused in part by the presence of the low humidity.

3. The plaintiff briefly contends that there should be an implied warranty of habitability of premises leased for commercial purposes and that the defendants were in breach of that warranty. He cites only *Boston Hous. Auth.* v. *Hemingway,* 363 Mass. 184 (1973), which held that there is an implied warranty of habitability of residential premises, and *Reed* v. *United States Postal Serv.,* 660 F. Supp. 178, 182-183 (D. Mass. 1987), which held that in certain circumstances a tenant of commercial property may repair the premises and deduct the cost from the rent. See *Guaranty Bank & Trust Co.* v. *Mid-State Ins. Agency, Inc.,* 383 Mass. 319, 320-321 (1981) (question of implied warranty in commercial lease not reached); *Crowell* v. *McCaffrey,* 377 Mass. 443, 451 (1979) (tort liability for breach of implied warranty of habitability). These cases do not deal directly with the question of a lessor's liability for injuries sustained by a lessee's employee due to alleged defects that made commercial premises not habitable.

The plaintiff asserts, without citation of authority, that "[a]s the case law indicates, there is a significant trend to abolish the distinction between residential and commercial leases." There is no such trend, at least in connection with claims for breaches of implied warranties causing personal injuries in commercially leased premises.[4] For the reasons we have already

---

liability might depend on distinctions between (1) long-term and short-term commercial leases, (2) leases of all rather than one part of a commercial building, and (3) experienced, arm's-length bargaining rather than uninformed bargaining.

[4] Only two State Supreme Courts have recognized such a warranty in a commercial context. See *Reste Realty Corp.* v. *Cooper,* 53 N.J. 444, 454 (1969); *Davidow* v. *Inwood N. Professional Group-Phase I,* 747 S.W.2d 373, 377 (Tex. 1988). Cf. *Golden* v. *Conway,* 55 Cal. App. 3d 948, 962 (1976) (philosophy behind implied warranty of habitability in residential leases persuasive in case of small commercial outlet). Although the Texas court's language is broad, that case involved a doctor who leased space for a

given for rejecting the imposition of tort liability for the allegedly negligent maintenance of the premises, we decline to rule that an implied warranty of habitability of the commercial premises existed in the circumstances of this case.[5] We are concerned here with the lease of an entire building to a lessee who introduced a manufacturing process that was dangerous at low levels of humidity. The "defect" of low humidity was not a condition for which the lessor should be held liable on a theory of an implied warranty of habitability, even if in some other circumstances we might recognize an implied warranty of habitability arising from the lease of property for commercial purposes.

*Judgment affirmed.*

---

medical office in a large building. The New Jersey court seems to have backed away from its holding in the *Reste Realty* case, and lower New Jersey courts have not always followed it. See *Kruvant* v. *Sunrise Mkt., Inc.*, 58 N.J. 452, 456, modified, 59 N.J. 330 (1971) ("When and under what circumstances [an implied warranty of fitness] should be applied in other than residential situations is a matter we leave open for future determination in an appropriate case"). Compare *Van Ness Indus.* v. *Claremont Painting & Decorating Co.*, 129 N.J. Super. 507, 513 (1974) (covenant of habitability implied in residential but not business leases), with *Westrich* v. *McBride*, 204 N.J. Super. 550, 554 (1984) (implied covenant applied to commercial lease of portion of premises for professional office). Several other courts have explicitly rejected such an implied warranty in a commercial context. See *J.B. Stein & Co.* v. *Sandberg*, 95 Ill. App. 3d 19, 25-26 (1981); *Service Oil Co.* v. *White*, 218 Kan. 87, 94 (1975); *Golub* v. *Colby*, 120 N.H. 535, 536 (1980); *Coulston* v. *Teliscope Productions, Ltd.*, 85 Misc. 2d 339, 340 (N.Y. Sup. Ct. 1975). See generally Annot., Modern Status of Rules as to Existence of Implied Warranty of Habitability or Fitness for Use of Leased Premises, 40 A.L.R.3d 646 (1971 & Supp. 1988).

[5] To the extent that commentators urge adoption of an implied warranty of fitness in commercial cases, their reasoning clearly supports such a result only in cases involving short-term tenants in multi-tenant buildings where the tenants rely on the landlord for most maintenance. See Note, Modernizing Commercial Lease Law: The Case for an Implied Warranty of Fitness, 19 Suffolk U.L. Rev. 929 (1985); Glendon, *supra* note 3, at 557-559.