JAMES ARTHUR CASSIDY *vs.* WILLARD WELSH
(and a companion case [1]).

Middlesex.   March 4, 1946. — May 29, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Landlord and Tenant,* Termination of tenancy, Surrender of lease, Landlord's liability to third person. *Evidence,* Conclusion of law, Cumulative.

A lessor who, upon nonpayment of rent, has neither entered to terminate the lease under a right reserved to him therein nor given a notice under G. L. (Ter. Ed.) c. 186, § 11, to "determine the lease," has not legal control of the premises merely because of the nonpayment.

The mere fact that, on June 16, when, under the provisions of a lease, the lessor had a right to enter for nonpayment of rent by the lessee but had not done so, the lessor rented the premises to a third party "as of" August 1 "retroactive starting" July 1, "provided" the lessee in possession "has vacated before that time," would not have warranted a finding of a surrender of the premises accepted by the lessor, or a finding that the lessor on July 3 was in control of the premises through a surrender.

A question, asked of a landowner, whether he knew, when he accepted a check from a certain person, that he had "created a tenancy," properly was excluded as calling for a conclusion of law.

No error appeared in the exclusion of certain evidence of a cumulative nature respecting the existence of an agency and the terms of a tenancy.

TWO ACTIONS OF TORT.   Writs in the Superior Court dated January 5, 1942.

The cases were tried together before *Good,* J.

*M. E. Viola,* for the plaintiffs, submitted a brief.

*R. B. Snow,* for the defendant.

DOLAN, J.   These two actions of tort are brought by minors to recover compensation for personal injuries sustained in the circumstances hereinafter recited.   At the close of the evidence the defendant filed a motion in each case for a directed verdict on each count of the declaration, which was allowed subject to the exception of the plaintiff concerned.   The plaintiffs having failed to order the prepa-

---

[1] The companion case is by Charles Eliot Cassidy against the same defendant.

ration of the record for entry in this court, as required by G. L. (Ter. Ed.) c. 231, § 135, as amended, the judge, being of opinion that his rulings and the plaintiffs' exceptions ought to be determined by this court, reported the cases for that purpose. See G. L. (Ter. Ed.) c. 231, § 111.

The declaration in ·each case was in three counts, the first alleging that the defendant was the owner and in control of certain premises, and that the plaintiff was on the sidewalk near the premises and was injured by reason of the defendant's negligence in allowing an "oil or gas tank" on the premises to explode. The second count contained similar allegations as to ownership and control of the premises by the defendant, and further alleged that the defendant allowed certain persons to place oil and "gas" tanks on the premises, and that the plaintiff was injured by reason of the defendant's negligence in allowing an oil or "gas" tank which exploded to remain upon the premises for an unreasonable length of time. The third count is based on allegations of maintenance of a nuisance by the defendant on the premises by reason of which the injuries complained of were sustained. The defendant's answer in each case contained a general denial and an allegation of contributory negligence on the part of the plaintiff.

The evidence most favorable to the plaintiffs would have warranted the jury in finding the following facts: The premises involved, located at 101 Main Street in Medford, were owned by the defendant as trustee, and consisted of a vacant lot of land upon which there were certain "shacks." The defendant had leased the premises to one Gagliardi on November 26, 1940, for a term of one year. Pertinent provisions of the lease are these: "To hold for the term of one year from the first day of December nineteen hundred and forty yielding and paying therefor the rent of Fifty ($50.) dollars a month in advance commencing Dec. 1, 1940 and on the first of each month thereafter. . . . the Lessor may enter to view and make improvements, and to expel the Lessee, if he shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof."

On June 1, 1941, Gagliardi was two months in arrears of

rent. On June 16 the defendant rented the premises to one Smith through one Cahalan, a real estate broker, "as of Aug. 1st . . . retroactive starting July 1st. provided . . . tenant has vacated before that time." These terms were set forth in a letter of Cahalan to the defendant dated June 16, in which he thanked the defendant for "this business." On June 16 Smith gave Cahalan a check of W. F. Smith Inc. for $50 containing this notation, "Rent 105 [*sic*] Main St Aug 1 — Aug 31." Cahalan retained $25 for his services and sent the defendant a check for the balance of $25. Smith telephoned the defendant and said that he had made some arrangement with Gagliardi to buy some of the latter's materials. As a result the defendant drove in an automobile to the front of the premises and parked the automobile there, but he did not leave the vehicle or enter upon the premises. He testified that he did not see the tank there, that he did not hear of the accident until July 15, that he did not make any contract or agreement with Gagliardi or any person representing him whereby he became no longer a tenant, and that he did not have him evicted from the premises. On June 19 Smith bought from Gagliardi the "house" that was on the land and the "property there." On June 20 he bought "some property that was inside the building." Smith testified that sometime in August he had a talk with the defendant about the "buildings on the land," and that he took possession on the first of October.

The jury would have been warranted in finding that on July 3, 1941, the plaintiffs were standing on the sidewalk in front of the premises; that "all of a sudden the violent explosion happened"; that as a result both of the plaintiffs were badly burned and seriously injured; that the explosion was that of a tank on the defendant's premises which had been used by Gagliardi for the storage of gasoline; that the tank had a storage capacity of five hundred fifty gallons; and that one of four openings in the tank was not closed and a person putting his nose close to that opening could smell gasoline fumes.

The plaintiffs rest their actions upon contentions that the defendant had legal control of the premises during the

entire months of June and July, 1941, and that he had taken actual control of the premises on or before June 16, 1941. The plaintiffs' contention that the defendant had legal control of the premises at the time of the accident is based upon the fact that, under the terms of the lease to Gagliardi, the defendant had a legal right to take possession of the property on June 1 for nonpayment of rent and that therefore he was thereafter and at the time in question in legal control thereof. We do not concur in that reasoning. The right reserved to the defendant to take possession of the property for the nonpayment of rent was a condition and not a conditional limitation. *Fifty Associates* v. *Howland,* 11 Met. 99, 101–103. *Markey* v. *Smith,* 301 Mass. 64, 68, 71. While the lease could have been terminated by the defendant at his election for nonpayment of rent, unless he entered while the default continued the lease remained in force. *Fifty Associates* v. *Howland,* 11 Met. 99. *Shattuck* v. *Lovejoy,* 8 Gray, 204, 205–206. *Stockbridge Iron Co.* v. *Cone Iron Works,* 102 Mass. 80, 85. *Rogers* v. *Snow,* 118 Mass. 118, 123. There is nothing in the record to warrant a finding that the defendant entered the premises for the purpose of terminating the lease in question, or that he gave any notice in writing to quit to "determine the lease," as provided by G. L. (Ter. Ed.) c. 186, § 11.

The plaintiffs base their contention that the defendant had actual control of the premises at the time of the accident on assertions that, by virtue of the letting to Smith, the premises prior thereto had been abandoned by Gagliardi and that the defendant had accepted surrender thereof. There was no evidence of a surrender in writing, and the only question as to this subject matter is whether there was a surrender by operation of law, with respect to which the rule of law is "that any acts which are equivalent to an agreement on the part of a tenant to abandon and on the part of the landlord to resume possession of demised premises amount to a surrender of a term by operation of law." *Talbot* v. *Whipple,* 14 Allen, 177, 180. *Carlton Chambers Co.* v. *Trask,* 261 Mass. 264, 267–268, and cases cited. *Washington & Devonshire Realty Co. Inc.* v. *Freedman,* 263 Mass. 554, 558. There must

be a meeting of the minds and the intent of the landlord to accept the surrender must be clearly shown. *Brewer* v. *Dyer*, 7 Cush. 337, 339. *Walker* v. *Rednalloh Co.* 299 Mass. 591, 595.

In the present case the evidence would not have warranted the jury in finding that there had been any agreement between the defendant and Gagliardi for termination of the lease, or that Gagliardi had in fact surrendered the premises to the defendant. The renting of the premises to Smith on June 16, to take effect as of August 1 "retroactive" to July 1, provided the tenant, Gagliardi, had vacated the premises, would not have warranted the jury in finding that there had been any surrender of the premises, and that at the time of the accident the defendant had accepted a surrender and taken possession of the premises. The defendant was under no obligation to relet the premises upon the failure of Gagliardi to pay the rent fixed by the lease, but he had a right to do so without releasing Gagliardi from his obligations thereunder. *Leavitt* v. *Maykel*, 210 Mass. 55. *Roberts* v. *Wish*, 265 Mass. 179, 181–182. A finding would not be warranted that the act of letting the premises to Smith as of August 1 "retroactive" to July 1, if Gagliardi had then vacated the premises, worked a surrender and acceptance thereof without entry by the defendant or Smith for the purpose of taking possession. See *Wallis* v. *Hands*, [1893] 2 Ch. 75; *Broadway Building Co.* v. *Moore Filter Co.* 85 Misc. (N. Y.) 385,388; Tiffany, Landlord & Tenant, § 190d.

"It is elementary that liability for damage caused by the condition of premises commonly depends upon control of the offending instrumentality, either through ownership or otherwise." *Frizzell* v. *Metropolitan Coal Co.* 298 Mass. 189, 191. *Lowell* v. *Spaulding*, 4 Cush. 277, 278–279. *Shepard* v. *Worcester County Institution for Savings*, 304 Mass. 220, 222. *Brazinskos* v. *A. S. Fawcett, Inc.* 318 Mass. 263, 265. In the present case, however, we are of opinion that the jury would not have been warranted in finding that at the time of the accident the defendant was in control of the premises in question. It follows that there was no error in allowing the defendant's motions for directed verdicts.

In the course of the examination of the defendant by the plaintiffs' counsel, the defendant was asked the following question: " . . . you knew when you accepted the check from Mr. Smith that you had created a tenancy, you knew that didn't you?" This question was excluded, subject to the plaintiffs' exceptions. The question called for a conclusion of law and was properly excluded. In the examination of Smith by the plaintiffs' counsel, he was asked whether Cahalan was his agent in the transaction in question, and his answer "No" was struck out at the request of defendant's counsel, subject to the plaintiffs' exceptions. There was no error in this respect. The witness had already categorically denied that Cahalan was his agent in the transaction involved. Smith was also asked what conversation he had with Cahalan in connection with the agreement for rental of the premises. The question was excluded, and the plaintiffs excepted. The plaintiffs offered to prove that, in the conversation that the witness had with Cahalan, he knew that Cahalan was an agent of the defendant and "that the conversation consisted of the terms of the tenancy as between the witness and the defendant." The witness then testified that he had a conversation with Cahalan sometime in the latter part of June. He was asked to state the conversation. Upon objection this question was excluded subject to the plaintiffs' exceptions. The exclusion of these questions was not erroneous. The witness had already testified, as before noted, that Cahalan was not his agent in the transaction, and there was nothing in the offer of proof to show that the terms of the letting to the witness were other than those set forth in Cahalan's letter to the defendant, which the latter and Smith accepted. Those were the terms and the only terms by which the jury could have found properly that the defendant was bound.

Since we are of opinion, as already stated, that the jury would not have been warranted in finding that the defendant was in control of the premises in question at the time of the accident, it is unnecessary to consider the exceptions of the plaintiffs taken in the course of the evidence intro-

duced by them for the purpose of showing negligence on the part of the defendant and the maintenance of a nuisance by him on the premises.

*Verdicts to stand.*