GUARANTY BANK & TRUST COMPANY *vs.* MID-STATE
INSURANCE AGENCY, INC.

Worcester. January 5, 1981. — April 3, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Landlord and Tenant,* Surrender.

In an action by a bank to recover rent due under a sublease with an insur-
ance agency, evidence that the leasing agent for the bank, knowing of
the problems the agency had encountered in the rented space, showed
the agency new facilities in another bank building; that the general
services officer of the bank had also suggested a move to the other
building; that, when the agency decided to buy its own building, the
bank provided the necessary financing; and that, subsequent to the
agency's relocation, the premises were substantially altered and
materials were stored there without the knowledge or approval of the
agency and a new lock was installed on the premises to which the
agency had no key warranted a finding that the bank had accepted the
surrender of the premises. [321-322]

CIVIL ACTION commenced in the Superior Court on Janu-
ary 12, 1978.

After transfer to the Central District Court of Worcester
and retransfer to the Superior Court, the case was heard by
*Brogna,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*John O. Mirick* for the plaintiff.

*David A. Wojcik* for the defendant.

HENNESSEY, C.J. Guaranty Bank & Trust Company
(bank) seeks to recover rent due under a sublease from its
tenant, Mid-State Insurance Agency, Inc. (Mid-State).
Mid-State refused to pay rent after it vacated the leased
premises, claiming that the bank had accepted Mid-State's

surrender of the property. A Superior Court judge conclud-
ed that the bank had in fact accepted the surrender. The
case was transferred to this court on our own motion. We
affirm.

The pertinent facts are as follows. The bank was the
prime lessee of a building owned by an individual residing
in another State. On October 6, 1971, the bank entered in-
to a sublease with Mid-State for a portion of the second floor
of the building, the sublease to begin December 1, 1971,
and to terminate July 31, 1981. Several months after Mid-
State took possession under the sublease it experienced
major difficulties with the demised premises. On several
occasions the premises were damaged by considerable water
leakage from skylights and pipes, rendering portions of the
leased area unusable for long periods of time. Mid-State
was without heat for nearly two months, during which its
staff had to work wearing overcoats. Work being carried
on elsewhere in the building caused large amounts of dirt
and dust to enter the premises. Other defects existed in the
building which, at best, amounted to a considerable and
constant annoyance to Mid-State and, at worst, made the
leased premises wholly unusable as an insurance brokerage
office.

In February, 1976, Mid-State stopped paying rent. In
August, 1976, it vacated the premises. At this time Mid-
State returned its only set of keys to the bank, at the bank's
request, so that the bank could show the premises to pro-
spective tenants. The bank attempted, without success, to
obtain a new tenant for the premises. The bank and Mid-
State reached an agreement regarding rent due through
September, 1976. The present dispute concerns only the re-
mainder of the term of the sublease.

The bank brought this action in a District Court for
$27,750 in unpaid rent which, the bank claimed, had ac-
crued through October 31, 1979. The District Court judge,
extending our reasoning in *Boston Hous. Auth.* v. *Heming-
way,* 363 Mass. 184 (1973), found a breach of an "implied
warranty of suitability for the intended use." Based on this

commercial analogue of the implied warranty of habitability, the judge ruled that Mid-State was permitted to terminate the sublease. The bank appealed to the Superior Court. The Superior Court judge concluded that the bank's claim failed because the bank had not proved the present existence and terms of the prime lease, to which its sublease with Mid-State was expressly subject. The judge also extended the *Hemingway* reasoning to this commercial property, as well as concluding that the bank had accepted the surrender of the premises. Since we conclude that the bank had in fact accepted the surrender of the premises, we find no need to reach further conclusions regarding what the Superior Court judge labeled as "legalistic discourse making new frontiers in law."

There was ample evidence from which to conclude that the bank had accepted the surrender of the premises. In 1976, when Mid-State was trying to relocate, the leasing agent for the bank showed Mid-State new facilities in another bank building. Mid-State's president stated that: "[K]nowing of my unhappiness, [the leasing agent] said that I could move into new space. He showed me space in the Guaranty Bank Building and said that they would take care of me on the rent because of the problems I had been having . . . ." The general services officer of the bank had also suggested that Mid-State move to the new Guaranty Bank building, but when Mid-State decided to buy its own building the general services officer acknowledged that the building proposed by Mid-State was of sound construction and that "it would be a good building for [Mid-State]." The bank financed Mid-State's acquisition of the new property, knowing that this building (proposed by Mid-State and recommended by the bank's general services officer) was to be used as Mid-State's new location. Subsequent to Mid-State's relocation, the originally leased premises were substantially altered without Mid-State's knowledge or approval. The air conditioning was removed, interior partitioning was removed, the plumbing and wiring were altered, rugs were replaced, and new materials (boxes of

paper, bar stools and hair dryers) were stored on the premises without Mid-State's knowledge or approval. Additionally, a new lock was installed to which Mid-State had no key. On the basis of this evidence, the judge was entitled to conclude that the bank had accepted the surrender of the premises. *Cassidy* v. *Welsh,* 319 Mass. 615, 618 (1946). *Walker* v. *Rednalloh Co.,* 299 Mass. 591, 598 (1938). *Caruso* v. *Shelit,* 282 Mass. 196, 199 (1933). Cf. H. Stavisky and R. Greeley, Landlord and Tenant § 842 (1977).

*Judgment affirmed.*