Houston, J.
Plaintiff Richard Seiden brings this wrongful death action on behalf of his brother, a former resident of Village Haven Rest Home. Defendant Pontiac Really Trust, owner of the real property where Village Haven is located, now moves for summary judgment.[1] For the reasons discussed below, defendant’s motion is ALLOWED.
BACKGROUND
The undisputed facts taken from the summary judgment record are as follows. Plaintiff, Richard Seiden, brings this wrongful death action on behalf of his deceased brother, Frederick Seiden (“decedent"), against multiple defendants.[2] Plaintiffs claims arise out of decedent’s suicide which occurred at the Village Haven Rest Home in Barnstable, Massachusetts on May 22, 1993. This motion concerns defendant Pontiac Realty Trust, titleholder to the real property on which Village Haven operates.
Plaintiff asserts several theories of liability sounding in tort and contract. First, Plaintiff contends in Count I that defendant owned, controlled, and operated Village Haven, and as such, had a duty of care to: (a) operate Village Haven in a safe and reasonable manner; (b) supervise and monitor decedent’s activities; and (c) take all reasonable steps to prevent decedent from committing suicide. Next, plaintiff claims in Count IV that defendant owed decedent a contractual obligation to take all reasonable steps necessary to prevent decedent from committing suicide by virtue of decedent’s status as a third-party beneficiary to the lease between defendant and Village Haven. Further, plaintiff contends in Count VI that defendant owed decedent a duty to maintain the Village Haven premises in a safe condition and not to allow unreasonably unsafe conditions to exist on the premises. Finally, plaintiff contends in Count VII that defendant acted recklessly and/or in a grossly negligent manner in breaching its duties of care owed to decedent.[3] Plaintiff claims that defendant’s breach of all these duties ultimately resulted in decedent’s suicide.
Defendant Pontiac contends that summary judgment is appropriate as to all of plaintiffs claims because plaintiff has no reasonable expectation of proving that defendant owned, operated, or controlled Village Haven since (a) the lease for Village Haven indicates that defendant has no involvement in the operation of the rest home and (b) the insurance policy for the rest home and its premises, relied on by plaintiff, does not indicate that defendant participated in the operation of Village Haven.
On May 31, 1990, decedent, who suffered years of mental illness, entered the Greenery in Middleboro, Massachusetts. Decedent came to the Greenery following a 15-year period of suffering with mental illnesses and resulting physical injuries. In 1989, decedent’s employer, KBIG, discharged decedent from his position as program director of radio station KBIG due to his mental illnesses. In 1989, decedent’s physician twice hospitalized him for psychiatric problems, diagnosing decedent with schizo affective disorder, obsessive compulsive disorder, and narcissistic personality traits. On February 23, 1990, as a result of his mental illnesses, decedent attempted suicide by jumping from a forty-foot bridge in Albany, New York. Decedent received treatment for his injuries, both emotional and physical, at the Albany Medical Center. Decedent also attempted suicide in 1984.
When decedent entered the Greenery, Greenery staff informed him that the Greenery was the only appropriate facility for both the physical and mental rehabilitation of decedent. Decedent remained a pa-, tient in the custody and care of the Greenery for almost three years until April 23, 1993, when the Greenery transferred him to the custody of Village Haven.
The Department of Public Health licensed CWE to operate Village Haven as a Long Term Care Facility, specifically a “Level IV or Resident Care Facility. Resident Care Facilities are not licensed to provide skilled or supportive “nursing care or other medically related services on a routine basis.” 105 CMR §150.001. Only under very specific circumstances, involving waivers, can a Resident Care Facility provide regular mental health, psychiatric, or even nursing care. 105 CMR §150.003(D)(2); 105 CMR §150.020. The plaintiff does not claim that such circumstances apply or offer any evidence showing that Village Haven obtained such a waiver.
In fact, plaintiff does not allege that Village Haven should have provided him psychiatric care. Plaintiff only alleges that the Greenery defendants acted improperly in decedent’s transfer to Village Haven. Further, plaintiff does not allege or offer any evidence showing that Village Haven improperly accepted dece *230 dent as a resident or offer any evidence that the Village Haven defendants were even aware of decedent’s history of suicide attempts. In sum, plaintiff does not allege or offer evidence that anyone other than the Greenery defendants knew decedent presented a particular suicide risk or had a responsibility to provide mental health services.
As to the physical conditions at Village Haven, plaintiff states that on April 25, 1993, decedent wrote plaintiff a letter in which he complained about the conditions at Village Haven. Decedent stated that the bathroom facilities and living accommodations were unacceptable; that he was forced to share a bathroom with six other men and a bedroom with three other men; that the room smelled of urine; that the food was poorly prepared and in minimal quantities; and that there were no age-appropriate peers among the twenty-three residents.
On May 3, 1993, after receiving decedent’s letter, plaintiff contacted defendant Michael Hamilton, an employee at the Greeneiy, and informed him of decedent’s complaints. Plaintiff states that although Hamilton promised to look into the situation at Village Haven, he failed to investigate the matter with sufficient thoroughness and detail. Likewise, no other employee or person affiliated with the Greenery conducted an investigation of the conditions at Village Haven. Similarly, the record provides no indication of whether plaintiff complained directly to any Village Haven official or whether Village Haven conducted an investigation of its own.
On May 22, 1993, decedent was found prone in the middle of the sidewalk in front of Village Haven. A subsequent investigation by the State Police determined his death to be a suicide, accomplished by a manner and means similar to the February 23, 1990 failed attempt.
DISCUSSION
I. SUMMARY JUDGMENT STANDARD
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate .the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “ [T]he opposing party cannot rest on his or her motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 297, 209 (1989).
II. PLAINTIFF’S NEGLIGENCE CLAIM
Plaintiff alleges in Count I that defendant Pontiac Realty had a duty to supervise and monitor decedent’s activities and to take all reasonable steps to prevent decedent from committing suicide. Negligence is the failure of a responsible person, either by omission or by action, to exercise the degree of care expected of a reasonably cautious and prudent person under the same or similar circumstances. Carroll v. Bouley, 338 Mass. 625, 627 (1959), citing Altman v. Aronson, 231 Mass. 588, 591 (1919); see also Toubiana v. Priestley, 402 Mass. 84, 88 (1988) (involving a wrongful death action against a realty trust owning or controlling the real property on which a fatal accident occurred). In any negligence cause of action, there are four elements plaintiffs must satisfy to prevail. Jorgensen v. Massachusetts Port Authority, 905 F.2d 515, 522 (1st Cir. 1990) .(applying Massachusetts law). Plaintiffs must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. Id. To succeed on a negligence claim against defendant, then, plaintiff must first establish that defendant owed decedent a duly of care. Id.
Duty can be proven by showing that a landlord retained control of the premises. “A commercial landlord [such as Pontiac Realty] who retains control of any part of the leased premises has a duty to take reasonable precautions to protect persons in rental property against reasonably foreseeable risks.” Wittaker v. Saraceno, 418 Mass. 196, 197 (1994); see also Restatement Second of Torts §360 (1965); and Restatement Second of Property, Landlord and Tenant §17.3, Comment 1 (1977). Generally, however, a commercial landlord has a lesser duty than a residential landlord because no special relationship exists with tenants. Wittaker, 418 Mass. at 197. “The foremost consideration in determining whether a special relationship exists between a plaintiff and a defendant is whether the defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.” Schmid v. National Bank of Greece, S.A., 622 F.Supp. 704 (D.C. Mass. 1985), citing Irwin v. Town of Ware, 392 Mass. 745, 756 (1984).
These cases make clear that a duty arises only when the risk of injury arising from defendant’s conduct was foreseeable. Jorgensen, 905 F.2d at 523; see also Carey v. New Yorker of Worcester, 355 Mass. 450, 454 (1969). Further, cases of tortious liability for suicide tend to involve failure to provide adequate care or protective custody to an individual defendant knows or had reason to know was a suicide risk. See McN *231 amara v. Honeyman, 406 Mass. 43, 49-53, 55-56 (1989) (suit against psychiatrist and psychiatric hospital for patient suicide); see also Slaven v. Salem, 386 Mass. 885 (1982) (prisoner suicide).
Assuming, for purposes of this motion, that defendant did retain control of part of the Village Haven premises, defendant still did not have a duiy to supervise and monitor decedent’s activities or to take reasonable steps to prevent decedent from committing suicide because decedent’s suicide was not foreseeable to defendant. First, there is no evidence in the summary judgment record suggesting that anyone at the Greenery ever informed defendant of decedent’s suicidal condition. Further, since Village Haven is not a facility licensed to treat people in need of psychiatric care, defendant reasonably assumed decedent to be mentally competent. See 105 CMR §150.001 and “Background” section, supra. As stated above, only under very specific circumstances, involving waivers, can a Resident Care Facility, such as Village Haven, provide regular mental health, psychiatric, or even nursing care. 105 CMR §150.003(D)(2). Nowhere does plaintiff claim that such circumstances apply. Moreover, it was not foreseeable that decedent’s living conditions would lead decedent to commit suicide. Since the risk of suicide at Village Haven is not reasonably foreseeable, defendant could not have undertaken a specific duty to protect decedent. Summary judgment is, therefore, allowed on Count I.
IV. PLAINTIFF’S CONTRACT CLAIM
Plaintiff contends in Count IV that defendant had a contractual duty to take all reasonable steps to prevent decedent from committing suicide by virtue of decedent being an intended beneficiary of the contract, i.e. the lease, between defendant and Village Haven. See Rae v. Air-Speed, 386 Mass. 187, 194-96 (1982). Plaintiff argues that decedent had a reasonable expectation that the mutual obligations in the lease would be met for his benefit. See Id. at 194.
When two people contract for the direct benefit of a third person, that third party is an intended beneficiary. Ayala v. Boston Housing Authority, 404 Mass. 689, 699 (1989). To maintain a cause of action for breach of contract, a third party must therefore show that he was an intended beneficiary of a contractual obligation. Id. “Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract.” Harvard Law School Coalition for Civil Rts v. President & Fellows of Harvard College, 413 Mass. 66, 71 (1992); see also Plymouth Housing Authority v. Town of Plymouth, 401 Mass. 503, 505 (1988). The mere fact that a third party benefits or is damaged by the contracting parties’ performance, or lack thereof, on a contract does not, in itself, give rise to a duty by the contracting parties to such third party, and thus cannot be the sole basis for a cause of action by the third party for a contracting party’s negligence. Spinner v. Nut, 417 Mass. 549, 555-56 (1994). The contracting parties’ intent determines whether a third party is an incidental or intended beneficiary. Markel Service Ins. Agency, Inc., v. Tifco, Inc., 403 Mass. 401, 405 (1988); see also Restatement (Second) of Contracts §302(l)(b) (1981).
Plaintiff has not shown that defendant and Village Haven manifested an intent to contract for the benefit of the Village Haven residents. See Ayala, 404 Mass. at 700-02 (primary purpose of contract between parties was to directly benefit plaintiffs). Plaintiff argues that because defendant and Village Haven acknowledged in Section 8 of the lease that the premises would be occupied by rest home residents as opposed to general residential tenants, decedent and the other residents are the intended beneficiaries of the contract between the parties. Plaintiff cannot merely rely on decedent’s status as a resident of Village Haven to show that he was an intended beneficiary of the contract. See Spinner, 417 Mass. at 555.
Section 8 of the lease between defendant and Village Haven indicates only that the premises be used for a specific purpose, i.e. as a State Licensed Rest Home. No evidence exists in Section 8 to support plaintiffs claim that the purpose of the lease is to provide adequate facilities for the residents. Nor does Section 8 identify the residents of Village Haven as the intended beneficiaries of the lease, either explicitly or by implication. At most, the residents are incidental beneficiaries of the lease. As such, plaintiff does not have a cause of action for breach of contract against defendant since defendant did not have a contractual duty to prevent decedent from committing suicide. Summary judgment is, therefore, allowed on Count IV
V. NEGLIGENCE/PREMISES LIABILITY
Plaintiff contends in Count VI that defendant breached its duty to maintain the Village Haven premises in a safe condition and not to allow unreasonably unsafe conditions to exist on the premises. Plaintiff further alleges that defendant’s breach of duty caused decedent to commit suicide.
A landlord’s liability for damage caused by the condition of the leased premises commonly depends upon whether the landlord was in control of the premises at the time in which the injury occurred. Cassidy v. Welsh, 319 Mass. 615, 619 (1946). A landlord who controls commercial premises has an alternative duty either to make the premises under his control reasonably safe for the use of his tenant, or others lawfully there, or to warn them of any dangers that might arise from such use, which are not likely to be known to them, and which the landlord knew or should have known existed on the premises. Camerlin v. Marshall 411 Mass. 394, 398-99 (1991); see also Oliveri v. MBTA, 363 Mass. 165, 166-67 (1973).
Defendant, here, did not maintain sufficient control to impose a duty. Rather, defendant delegated this responsibility to Village Haven in the lease. Supporting evidence can be found in several sections of the lease. *232 For example, Section 4(B) states that “. . . Lessor has no obligation to . . . provide repair, maintain, replace, inspect equipment, fixtures, or appurtenances regarding same.” Likewise, Section 11(A) says “Lessee covenants to . . . keep the Premises in a safe and sanitary condition” and to “keep the Premises clean and neat . . .” Finally in Section 25(A), “Lessee acknowledges that Lessor has not made any representation or warranty, expressed or implied, as to the condition of the Premises, the fitness of the Premises for any particular use . . .”
Even, assuming, that defendant did retain sufficient control of the Village Haven premises, defendant still cannot be held liable to plaintiff because (1) Village Haven is not a facility licensed to treat and provide for mentally ill patients and (2) defendant was not told by anyone that decedent was a suicide risk. Defendant simply did not know or have any reason to know that decedent posed a suicide risk. Thus, defendant could not have undertaken a specific duty to maintain the premises in such a condition so as to prevent decedent’s suicide. Summary judgment is, therefore, allowed on Count VI.
VI. GROSS NEGLIGENCE
Plaintiff contends in Count VII that defendant was grossly negligent in breaching its duties owed to decedent. Plaintiff alleges that defendant’s breach of its duties in Counts I, IV, VI, and VII caused decedent’s suicide. Since, however, the court finds defendant owed no duty to decedent under these Counts, plaintiff can no longer assert gross negligence as a basis for a cause of action against defendant. Therefore, summary judgment is allowed on Count VII as well.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED as to Counts I, IV, V, VI, and VII.

By agreement of the parties, this motion, originally brought as a motion to dismiss, is treated as a motion for summary judgment.

The defendants can be organized into two groups. Group one, the “Greenery defendants,” includes Greenery Rehabilitation Group, Inc., SLF Corporation, New Medico Rehabilitation, Skilled Nursing Center at Forest Manor and Michael Hamilton, defendants involved in decedent’s care at the Greenery facility in Middleboro, Massachusetts where the decedent resided prior to his transfer to Village Haven Rest Home. Group two consists of parties responsible for the operations at Village Haven, including Village Haven Rest Home, Janet Williams, Ben Spadoro, CWE Ltd. Corporation (“CWE”), holder of the state license to operate Village Haven Rest Home, and Pontiac Realty Trust, titleholder to the real property on which Village Haven operates.

In his complaint plaintiff also claims that defendant had a duly to assist decedent in completing his pension benefit forms and to insure the availability of all pension funds or other financial resources. Plaintiff now concedes that summary judgment is appropriate on the breach of contract and negligence claims concerning the pension benefits since there is no evidence that defendant knew, or should have known, of the pension funds to which decedent was entitled, but failed to receive due to his death.