Fabricant, J.
Plaintiff Richard Bernardi was injured in the course of his employment as a result, he alleges, of a defective condition in the warehouse building where he worked. This action is his negligence claim against his employer’s principals, in their capacities as the trustees of the trust that owns the building in which his employer operates. Presently before the Court is the defendants’ motion for summary judgment. For the reasons set forth below, defendants’ motion will be allowed.
BACKGROUND
The following facts are established as undisputed in materials submitted in support of and in opposition to the present motion. Until his injury on December 16, 1994, the plaintiff worked for the Paul W. Mariis Company, Inc. (“the Company”), a warehousing concern located in Everett. The warehouse building in which the Company operates, along with the land on which it is located, is owned by the Marks Realty Trust (“the Trust”), and leased by the Trust to the Company. The trustees of the Trust are Philip, Patrick and Peter Marks, who are also the officers of the Company.
Located within the warehouse building are three storage freezers connected by a series of doorways. The third freezer, and the doorway connecting it to the second, were installed by a contractor in 1992. The contract for this project was executed by Philip Marks as trustee of the Trust, and the Trust applied for the building permit, but the Company paid for the construction. The cement floor in the area between the second and third freezer froze before it had a chance to cure. As a result, the cement chipped soon after the installation, causing difficulty in driving forklifts over the area. To solve this problem, a steel plate was installed, bolted and welded to the cement floor.[2] On December 16, 1994, plaintiff was driving a forklift between the second and third freezers. The blades of the forklift went under the metal plate, causing plaintiff to be thrown forward. He struck his head on the machinery of the forklift and suffered injury. There is evidence that the plate “had lifted a little bit,” that two other employees had suffered similar accidents within a short time before the plaintiffs accident, that the plaintiff himself had had a previous accident that occurred in a similar manner but that did not cause injury, and that the Markses were aware of these facts and had posted a warning directing employees to back over the plate.
At the time of the accident, the relationship between the Company and the Trust was governed by a standard form commercial lease for the period January 1, 1994 to December 31, 1997. The lease described the leased premises as “land with buildings and improvements thereon” located at 8 Commercial Street, Everett. The standard form provided that:
The LESSEE agrees to maintain the leased premises in the same condition as they are at the commencement of the term or as they may be put during the term of this lease . . . The LESSEE shall not permit the leased premises to be overloaded, damaged, stripped, or defaced, nor suffer any waste.
Added to this form provision was the typed-in provision that “Lessee shall pay all costs of maintenance.” The standard form lease also provided that the lessee would pay for all taxes, utilities, and water and sewer charges, would maintain insurance coverage on the premises, and would indemnify the lessor for certain risks, and that the lessor would have the right to “enter to view the leased premises and . . . make repairs and alterations as LESSOR should elect to do . . .” A schedule attached to the standard form lease provided that “Lessee shall pay to Lessor ... all operating and management expenses with respect to the land and buildings of which the leased premises are a part, including without limitation, insurance costs, security and management fees, and any other costs incurred *33 by Lessor in managing or operating the leased premises."
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving pariy to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial, like the defendants here, may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, Mass. 404 at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The undisputed facts here establish that the defendants had no duly to the plaintiff to maintain the leased premises. Accordingly, all other factual issues are immaterial, and defendants are entitled to judgment as a matter of law. As the Appeals Court said in Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975 (1995):
In the context of a lease for commercial purposes, a landlord has a duty to keep the premises in safe condition, with attendant liability if he does not, only if (1) he has undertaken so to do under the terms of the lease or (2) the location of the defect that caused injury was in a common or other area appurtenant to the leased premises “over which the [landlord] had some control.” Chausse v. Coz, 405 Mass. 264, 266 (1989). Camerlin v. Marshall, 411 Mass. 394, 397 (1991). If a tenant.. . occupies the entire premises — i.e., there are no areas used in common with other tenants — then the tenant is responsible for keeping the premises safe, absent a contractual undertaking to the contrary by the landlord.
The lease between the Company and the Trust places full responsibility for maintenance squarely on the Company, which occupied the entire premises. The area where the accident occurred, and where the alleged defect was located, is clearly within the leased premises, and not in any common area; indeed it appears that no common areas exist. Under Sheehan, therefore, and the cases it cites, the Trust had no duty of maintenance for which the plaintiff can hold it liable in tort.
The plaintiff argues that the lease provisions, along with the Trust’s involvement in contracting for installation of the freezer, gave it “control” over the premises, so that it was in a position to repair the defect. The argument misconstrues the meaning of “control” as that term is used by the Appeals Court in Sheehan. Ownership inherently provides ultimate control, but Sheehan and the cases cited make it clear that ownership alone does not give rise to a duty to maintain.[3] In context, it is clear that the Sheehan Court referred to on-going, day to day control of a specific area, arising from use of that area by the landlord or others, in contrast with the tenants’ exclusive use of leased portions of land or buildings. Here, there is no evidence that the area involved was used by, or was under day to day control of, anyone other than the tenant; on the contrary, all the evidence is that the accident occurred in an area used and occupied exclusively by the tenant. That the landlord had a role in making a capital improvement does not distinguish the case from Sheehan or the cases it cites; if that fact alone were enough to impose a continuing duty of maintenance, the rule announced in those cases would have little application in practice.
The plaintiff also relies on an earlier version of the standard form lease, that was in effect between the Company and the Trust for earlier time periods, and that contained slightly different language. That version, like the present one, made the tenant responsible for maintenance of the leased premises, but it also placed on the landlord a duly to “maintain the structure of the building of which the leased premises are a part.” Even if this language had been in effect at the relevant time, in the context of the form lease it clearly contemplates circumstances in which the leased premises are “a part,” rather than the entirety, of a building, so that a structure exists, requiring maintenance, that has not been placed by contract under the tenant’s control. That was not the situation here.
The plaintiff argues, citing Agustynowicz v. Bradley, 405 Mass.App.Ct. 599, 601 (1988), that the steel plate constituted an “unusually hazardous defect” that had existed on the premises prior to the inception of the lease. Assuming that that case would support liability for such a defect, the facts do not support the theory. There is no evidence that the steel plate in and of itself was hazardous at all, to anyone, let alone “unusually hazardous” to users of the building in general. The evidence, rather, is that the condition of the plate at the time of the accident (that is, with edges no longer flush with the floor) posed a hazard, not in *34 general, but specifically to persons using the area in the particular way that the tenant’s employees used it in the conduct of the tenant’s business — that is, persons driving forklifts. The problem, it appears, was the combination of the condition of the plate at a time when it was under the tenant’s control and maintenance responsibility, with the particular use to which the tenant put it. Nothing in Agustynowizc supports liability of the landlord on these facts.
Finally, the plaintiff argues on policy grounds that the rule applicable to residential tenancies under Young v. Garwacki, 380 Mass. 162 (1980), should be extended to this case, despite the Supreme Judicial Court’s holding in Camerlin v. Marshall, 411 Mass. 394 (1991), that that rule does not apply to commercial property. The plaintiff contends that landlord liability is necessary to encourage maintenance of property because a tenant-employer, like the residential tenant in Young lacks incentive to maintain since it is immune from suit by injured employees under the workers compensation law. Even if such a policy-based ruling were open to this Court under Camerlin v. Marshall, 411 Mass. 394 (1991), the argument ignores the employer’s incentive to maintain a safe workplace so as to minimize worker’s compensation insurance premiums by avoiding claims. If any public policy comes into play here at all, it is the policy underlying the worker’s compensation system to minimize litigation arising from industrial accidents by guaranteeing injured employees the benefits specifically provided by statute, while enforcing their statutory waiver of the right to sue their employer for damages in tort. The present claim seems a transparent attempt to circumvent that policy through use of the fortuitous circumstance of the manner in which the employer’s principals hold title to its place of business.
ORDER
For the forgoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment is ALLOWED.

The materials submitted in connection with the present motion indicate that the installation of the plate was performed by a contractor, but do not indicate who, as between the Trust and the Company, contracted with or paid the contractor for this work.

For the same reasons, the plaintiffs citation to provisions of the building code is unavailing. There is no doubt that the Trust owns the building, and that owners of buildings have certain responsibilities under the building code, but case law squarely rejects the proposition that ownership alone is enough to give rise to tort liability for defects in leased commercial property. Camerlin v. Marshall, 411 Mass. 394, 397 (1991).